Are you with us? Yes, ma'am. And Mr. Yes, ma'am. Great. Very good. Mr. Spillane, you may proceed. May it please the court. Good morning. This is a capital case. There are no guilt phase issues. There are two issues in this case. Both deal with the penalty phase. One is the penalty phase jury instructions, which deals with two parts, a ring claim and a mills claim. The second claim is that counsel was ineffective for not calling a particular psychiatrist or a psychiatrist in general, Dr. Caruso at the penalty phase. I will deal with the instructional error claim first. There's a procedural bar issue, which I'll get to, but I will first deal with the merits. The most two important facts dealing with the merits is that the Missouri jury instruction requires the jury to find an aggravating circumstance beyond a reasonable doubt before proceeding any further. And there's no question in this case that the jury did. The second most important fact in this dealing with the mills claim is that Mills finds a constitutional violation. If a jury is required to unanimously find a particular aggravating circumstance before considering it, that does not happen in Missouri. In Missouri, the jury is directed that they can consider any fact in mitigation that's in the record. So that is an important fact. The case law that is important to the ring claim is McKinney v. There is no question that the jury in this case found the fact of an aggravating circumstance. The way the petitioner deals with that is in two ways. One, he says that's dicta. It's not real because the case was about reweighing at the sentencing phase, and if it was dicta, the decision wouldn't make any sense because they were allowed to reweigh at the sentencing phase after an aggravator had been found. And the second is that even if it was dicta, it doesn't matter. The precedent of this court, which is binding, holds that this court must follow a United States Supreme Court dicta unless there's a subsequent decision that contradicts that dicta. So as a matter of black letter law, the ring claim fails, and it was error to grant relief on it. The second claim is the Mills claim, and I'll talk a little bit about the Missouri jury instruction on the Mills claim and then get a little bit into the case law. The way the Missouri jury instruction works is, as we first discussed, the jury must find an aggravating factor. Then, once they're on sort of the highway of consideration, there is an off-ramp that is, if the jury finds unanimously that whatever aggravators each juror has found outweigh the aggravator, then that's the off-ramp. The case is over. They must find life without parole. At this case, they found an aggravator. They did not find that any mitigating circumstances, whatever they thought them to be, unanimously, they did not unanimously think that outweighed the aggravating circumstance. So then they went on to the consideration phase, and the consideration phase is considering everything, guilt, penalty, anything that they think is mitigating, does that outweigh the aggravator? And at that stage, they deadlocked. They told the judge they deadlocked. The proper procedure at that point is for the judge to make a decision whether to sentence to death or life. He did sentence to death, and there's no Mills violation. And the cases that I cited in the brief for this or in the main brief are Griffin, McDonald, Murray, and Battle. In all of those cases, this court considered the same jury instruction and found that it did not violate Mills v. Maryland or McCoy v. North Carolina. So I think you're bound by precedent on that. Additionally, there's a Teague bar because it would require an expansion of Mills and McCoy, which teach that a jury cannot be required to unanimously find a single aggravating, excuse me, a single mitigating circumstance. It would be an expansion of that to say that the Missouri jury instructions violate that because they don't do what Mills and McCoy ban. So as well as binding precedent from this court, you have a Teague bar. There's also a procedural bar issue, which because this is not even a close issue, I don't think is very important, but it's there. The Missouri Supreme Court found that because the Mills claim was not properly raised in an objection to the instructions at trial and not properly briefed in the point relied on, it was procedurally barred. And then the Missouri Supreme Court went on and addressed the merits in an alternate holding and found that there was no constitutional violation. So under Harris v. Reed, I believe footnote 10, the United States Supreme Court said that a state court can do that. It can find this procedural bar and still address the merits and they don't negate each other. So I think you have a you have deference and you have a bar. Now, what the district court said about the bar is that it was forfeited because it was not raised soon enough in the district court level. And that could be accurate, but it's not waived because this court has the option under United States Supreme Court precedent and the precedent of this court to enforce a bar, even if it was not properly raised at the district court level. So I don't think this court has to deal with that to address the claim because it's clearly meritless. But there is a bar out there that this court could enforce based on procedural bar if it wished to. And there's a bar which is not forfeited. And there's deference under 2254 D. So I think the instruction claim, it was just error to find instructional error that was reversible under the United States Constitution in this case. And if there are no questions on that, I'll move on to the ineffective assistance of counsel claim. What we have here is a case in which at the penalty phase, the offender presented four experts, three psychologists and a pediatrician, and he, in his opening statement, promised to also produce a psychiatrist. There are three paragraphs on that in the opening statement. I believe it is in the appendix at page 2463 through about 65, I believe. And in those in the opening statement, he said Dr. Caruso will testify to X. And then he immediately and that was the fourth one he listed out of five and then immediately followed that with Dr. Cummings reviewed the same materials. And he's going to testify a long time, Dr. Cummings, not Dr. Caruso. And he will give you his opinion on how the mental stuff fits with mitigation. And again, he said it would be viewed the same thing as Dr. Caruso. Go ahead. So Judge Cobus here, just a question along those lines. When we're analyzing the prejudice prong of Strickland here, do we consider counsel statements about Dr. Caruso during opening? Or is that do we aggregate that kind of with the failure to check the background? Or is that a separate analysis under a precedent? I'm a little unclear on that. In other words, when we look at prejudice, do we consider the opening statement? I think the correct answer is no, but I think the district court said yes. And the reason I think the correct answer is no is Middleton at 55 F. Third and cases like that teach that one cannot aggregate prejudice from separate acts by counsel. And I think we have a bunch of separate acts here. First, counsel was informed on the night before the penalty phase when he got an email from Dr. Caruso saying, I didn't tell you, but I had some problems in medical school that they might find out and impeach me with. Here are some questions that you can use to beat that. That's one act. Then, convinced by that, the next morning when he gave his opening statement, he said, he didn't say anything about that. I'm going to call Dr. Caruso and gave those three paragraphs that I just referenced you. And then that night, he talked to other people on the team and to his supervisors, and they talked to him about it. And then he changed his mind and didn't call Dr. Caruso. So those are three separate decisions in my mind. And I mean, I don't think if you put the whole thing together, you've got Strickland prejudice. But I think you have to break it apart under Middleton, because it was reasonable when he first heard from Dr. Caruso on the night before his opening statement to say, I'm going to go with what I wanted to do and then do it. And then, you know, I'm not sure the prejudice from that goes to his later decision when other lawyers and his boss talked to him and said, no, maybe you shouldn't call him. And he changed his mind. What is the decision that's before us? Is it the failure to investigate only? I think all the prejudice is accumulated in the district court's decision. So, I mean, I think they briefed it all as one thing. And I'll talk about how it was briefed in the district court too, or in the Missouri Supreme Court, because it's kind of odd. Because in the Missouri Supreme Court, they raised the failure to investigate, but not in the pleading. They raised it in their argument and presented evidence on it in the evidentiary hearing. And they got a ruling on the failure to investigate. I believe it's pages 366 and 367 of the appendix. And then the Missouri Supreme Court at that point, when it was on appeal, said we will review the general claim for not calling a psychiatrist and not calling Dr. Caruso that was pled. But we will not review the failure to investigate because it wasn't properly pleaded. So we have kind of an odd thing there, because we have the motion court ruling on the investigate claim, and the Missouri Supreme Court only ruling on the broader not calling a psychiatrist or not calling Dr. Caruso claim. And what I've argued under Williams v. Roper at 695 F-3rd is this court saw something like that and looked both at the motion court decision and the Missouri Supreme Court decision for prejudice and something like that again in Weaver v. Bowersox, I think at 241 F-3rd. But that was a Batson claim. So I think what they're trying to do is put the whole thing before you. At least that's my understanding. And opposing would know better than I do on that. But I think they're trying to raise the whole thing and say it's one continuous act and all the prejudice accumulates. I would disagree with that. I think there's four claims. And I think if you review them, you've got to review them individually. And they're less individually than they are together. But I think if you review them all together, they lose both under de novo and under deference. And I think you have to give deference. Not only because the motion court reviewed the failure to investigate claim, but the Missouri Supreme Court said specifically they were not ineffective for not calling Dr. Caruso and there was no prejudice. So that's a broader claim than the failure to investigate claim. And I think they've got a very narrow road to run if they're going to say there was no prejudice from not calling Dr. Caruso, according to the Missouri Supreme Court, because his testimony was essentially the same or would have been essentially the same or any psychiatrist would have been essentially the same as Dr. Cunningham and saying, ah, but it's different because of failure to investigate. It would seem to me that the prejudice would be essentially the same. Would you argue that the last reasoned opinion on the question of the failure to investigate is the motion court opinion and that its findings and conclusions are entitled to deference in the federal courts? Yes, that's what I'm arguing. And I'm arguing it's like Williams v. Roper, although in Williams v. Roper, this court found that the Missouri Supreme Court also addressed one prong. They just did it in a single sentence, but they looked at this court, looked through through the district court for the excuse me, I keep saying district court, the circuit court for the reason. And as long as before I forget, I'll think there's a procedural bar on this issue that's more important than the bar on the first issue. And that is the district court reached the failure to investigate claim based on Martinez v. Ryan finding that post-conviction counsel was ineffective for not pleading the claim. But I do not think they can do that under Kennedy v. Kemner. Because in Kennedy v. Kemner, this court taught that the prejudice from alleged ineffective assistance of counsel has to be at the same level that counsel acted. It can't be at some future level at a higher court. And here, the petitioner got an evidentiary hearing and a merits ruling at the level that counsel is alleged to have been ineffective for not properly putting the claim in the pleading with a failure to investigate as well as a more general claim. So as a matter of law, I don't think the district court could have even gotten beyond the procedural bar under Kennedy v. Kemner. But if one goes beyond it, I think they lose on deference. And I'll talk a little bit about deference in reference to Williams v. Roper. What this court did there was that was a case where counsel was alleged to be ineffective for not putting on basically mental health and abusive childhood evidence at the penalty phase. In that case, they sort of put on a defense that the family was good and everybody would miss him if he were executed and he had children and he wasn't a bad guy, and they flipped when that lost. And what this court did in looking at prejudice under deference is this court went to U.S. Supreme Court precedents and tried to find cases where the U.S. Supreme Court looked deferentially at a state court decision not to find prejudice in ineffective assistance of counsel claim. And what this court did was this court looked at Porter this court looked at Cullen v. Penholster, and this court looked at Vizcayati. And what this court said was the only case they could find like this where the U.S. Supreme Court found preference in a, excuse me, prejudice in a deferential situation was Porter. And that was very different because Porter was a war hero that had been in two very big battles. Most of his unit had been casualties. He'd been traumatized. He'd acted heroically. He came back. He struggled with that. But he was traumatized and he eventually killed somebody. And the United States Supreme Court said, that's different. You have to put that in. And that's what this court said in Williams. That's different than cases like Vizcayati and Penholster where it was just failure to put on the mental health defense and abusive childhood defense. That got deference. It was the war hero case that didn't get deference. And that was the distinction this case made in Williams v. Roper. I was going to talk a little bit about their cases. Counsel, let me interrupt you before you go to a different, take a different track. And just for clarification, for my benefit, what is in the record? And you alluded to, I think, something about this a couple of minutes ago. But what's in the record as to why counsel mentioned Dr. Caruso in his opening, but then opted not to go forward with his testimony? Although we already knew of a potential that he would be subject to perhaps some destructive cross-examination. The difference from what I can tell from the record in his testimony at the PCR hearing is that he talked to his supervisors and other lawyers. And they told him not to do it. And his supervisor, in fact, told him that if he did do it, he should tell the prosecutor about the impeachment evidence. I think there's a fair argument that he wasn't legally required to tell the prosecutor about the impeachment evidence. I mean, Missouri Supreme Court Rule 2305 says one must reveal statements or reports by experts that one intends to use. So I'm not sure this fits within that category. But certainly he had been told by his supervisor that he should tell the prosecutor. And he was given advice on this by his supervisor and other attorneys. So I think that is a separate decision after the point where he received that advice. And in the context of that advice, after his presentation of the defense case, in the penalty phase, he went to the judge and prosecutor and told them and said the prosecutor should not comment on this because it would be prejudicial. And the prosecutor didn't. So that may be an important fact as far as prejudice, because in closing argument, the prosecutor did not mention the failure to the failure to call Dr. Caruso. Well, even if the prosecutor didn't mention it, the way that the argument laid in was essentially all you have is this old evidence. All you have is Cunningham, who's unreliable because he's, you know, basically bought and paid for by defense lawyers, makes a lot of money and is not reliable because he's never testified for the government. And then you just got this old stuff, this old stuff, this old stuff, which clearly in light of the opening statement does tend to draw attention to why wasn't somebody else called, right? But my question really is this, is that as we do the analysis on the prejudice prong itself, the Missouri Supreme Court has found that there was no prejudice arising out of the failure to call an expert witness and basically went through an analysis. And factually, the analysis of that prejudice is essentially the same, whether there's a failure to investigate or a failure to call. And are we owed deference to the Missouri Supreme Court's factual finding, even though the question was presented in a slightly different way? Or is that sort of de novo to us? My answer is yes, that they are owed deference, because to me, it's a broader claim of failure to call a psychiatrist, and they specifically referenced Dr. Caruso and the narrow claim for failing to call him for reason X, whether they failed to call him for reason X or reason Y, the court found there was no prejudice from not calling him. And I was going to go back to an earlier part of your question. It wasn't all old stuff from Dr. Cunningham. Dr. Cunningham did lots of interviews and such. In this case, I believe at page 1690 of the transcript, he talks about doing a four-hour interview. So, yeah, it's not old. Yeah, and I didn't mean to imply that Cunningham wasn't new. What it is is that the other two witnesses who testified from the defendant's childhood were told Cunningham was unreliable because he's just bought and paid for, and that's where I was going with this. I think there is the thrust of the argument. The first three experts are not about current things. Dr. Ricardo is kind of about neurological injury. That's why it was found that it would have been redundant to call somebody like Dr. Heilbrunner a neuro. So the redundancy in the case was, I think, that both Dr. Cummings and whoever the psychiatrist they would have called would have talked about the same things. And there's an important distinction there, too, because at the post-conviction hearing, the petitioner didn't call Dr. Caruso and said, I would have testified to X. They called Dr. Peterson and said, if we had called a psychiatrist like Dr. Peterson, he would have testified to X. And that's what everybody used for prejudice. And the Missouri Supreme Court said, this is essentially the same as what Dr. Cummings found. Was there any testimony about the state of mind on the day of the murder? I think opposing counsel makes that argument, and I think the district court observed that as well, that that's a potential gap. I'm not sure it's a gap in the sense that Dr. Cummings talked about everything, his different psychological ailments, everything that had happened to him in his life, and that made it hard for him to make good choices, to comply with the law. He didn't say it was impossible. He said he can make choices, but he said all these things makes it hard. So I think in a sense that goes to your question, but it may not use the exact words. And I think in the opening statement concerning Dr. Caruso, counsel used exact words from aggravating mitigating circumstances, saying counsel would address those, although he wouldn't have instructed on those and he said so. But he later, when he talks about Dr. Cummings, just said he will give you his view on how this all fits together with mitigation. So it wasn't the same specificity. But I think the thrust of the Cummings testimony was that because of all of his mental difficulties and his background, it was very difficult for him to comply with the law and make correct choices, although not impossible. So I hope that answers your question. Is there anything else that that I can answer or I'll save for rebuttal? OK, thank you. Very well, Mr. Comp, you may proceed. Well, good morning, Your Honors. It may please the court. I will address the the ineffectiveness claim first. I think before before I get into the to the meat of the claim, I think it's important to state up front that Judge Perry did not err in granting ruling and she should be affirmed. I think she acted in the manner that this court should encourage district court judges. She considered mayor briefing, considered live testimony at an evidentiary hearing after the attorney general did not propose that evidentiary hearing, considered post hearing briefs, and only after all of that did in a very close case that she find the trial counsel were ineffective for failing to vet their expert and thus failed to present what was the linchpin of their mitigation case, as they promised the jury. Judge Cobus, you mentioned right up. Your question was, was there a gap? And there was a gap as as recognized by Judge Perry. There was no evidence related to the state of the mind, Mr. McLaughlin's state of mind on the on the night of the events. And Judge Erickson, your question about the closing argument. That's exactly what the state hit upon. They they talked about that gap. And at one point they even said to the jury, there's nothing regarding what happened that night and there's no admissible evidence regarding from any expert testimony whatsoever. So that gap is what Judge Perry's opinion addresses. And the reason there is that gap is the ineffective assistance of counsel. They did not vet their expert. And it's and this this wasn't, you know, I guess before we get into the vetting, I mean, this was a close case. The jury refused to return a death recommendation. They were deadlocked. They rejected three out of the four aggravating circumstances submitted by the state. So in that context, defense counsel. And and when we look at what they did on that end, they did a great job on that end. But the other half of the case, and it was their purpose and theory from the beginning was to talk about state of mind evidence. And history only gets you so far. You have to to contextualize that night. That is strong, much stronger mitigation than talking about just history. And that's what they in their penalty opening, they promised they featured Dr. Caruso. They promised mental health evidence related to Mr. McLaughlin's mental state of time at the time of the crime. And then they didn't deliver. Then they broke that promise. So today and in their brief to hear to hear the attorney general, they talk about where trying to improperly accumulate claims. That's not the case. And this judge Perry did not commit that error. And if you look at the return, which is at Appendix 96, they themselves talk about how misstating evidence during and I'm quoting here misstating evidence during opening statement can have a negative effect because counsel's failure to keep a promise and Paris's personal credibility and may lead the jury to view the unsupported claim is an outright attempt at misrepresentation. That's their argument to the district for they they themselves below. And then even in their post hearing judgment motion or post post post evidentiary hearing merit briefing made the same argument. And that's at this report docket number 70 page nine page ID 693. So they're they're trying to change strips, change ships midstream. They argued it was appropriate for the district court to consider this and setting all that aside, setting aside their change in position on that. The Supreme Court says it's OK. If you look at the Wiggins case, Wiggins talks about in the prejudice analysis that it's trial and Wiggins specifically referenced trial counsel making a promise regarding presenting evidence regarding a client's history and background and breaking that promise. So what the district court did complies with what the Supreme Court says they can do and complies with what the response of the attorney general below had argued to them. And I think the. The heft of this is that there was no expert testimony that addressed mental health at the time of the crime. And and that's significant because what happened is that there is. You had the ability with with Dr. Cruz or Dr. Peterson to talk about that there's a causal connection between his mental health symptoms and his impaired actions at the time of the crime. And we know that this is a mitigation theory that they wanted to present. They had retained Dr. Caruso for over a year before the time of trial, and they intended to. This was this was going to be their their attempt was to establish the two statutory mitigators of extreme emotional distress and that Mr. McLaughlin was substantially impaired and could not did not have the capacity to appreciate and conform his conduct to the law. And that was that was their whole mitigation theory. It was all this history. And again, history only gets you so far. You have to you have to if you can tie that history together for the for for the jurors. It would have provided substantial mitigation, but not only that, the expert testimony would have contextualized and less than the one aggravating one aggravated jury found right. Remember, they rejected three of the four aggravators and the one aggravator that they found related to the night of the offense, the actual offense. So any evidence that you can marshal that that. Lessens the impact of the depravity aggravator. I think Williams versus Taylor talks about evidence where if in the U.S. Supreme Court talked about if you can change the focus from the client being, I think the term was cold blooded that the Supreme Court used into a compulsive reaction that changes the face of of what the jury is considering. Counsel, Judge Cobus here. The state court found the evidence was cumulative. Is that correct? And that therefore there was no prejudice. What level of deference do we owe to that finding, if any? So that that's a that's a good question. And it's not. It appears to be easy, but it's not easy because of the history of these claims. So I hope you don't think I'm not avoiding your claim. The short answer is no, it shouldn't be provided deference. If you look at 2254 D, it talks about the empowering statute talks about adjudicated claim on the merits. This is a claim that was not adjudicated on the merits. So the provision of 2254 D doesn't even that isn't doesn't meet the criteria. So we don't even get into whether D1 or D2 is applicable. So that's my first. So that's why initially I say no. The second is if you look at Townsend versus Sane, which is sort of a precursor to 2254 D. It also ties deference to an adjudication on the merits. So what we have here, Your Honor, is a claim that the Missouri Supreme Court found to be procedurally defaulted. So I think that the district court was well within its well within its prerogative to apply 2254 D in that manner and address the merits. Setting that aside, the district court did, in footnote 15, addendum 49, did do an alternative AEDPA analysis related to Dr. Caruso or Dr. Cunningham and the cumulative, the cumulativeness. So that did occur. And I think and so on, this is an alternative argument. I don't, you know, obviously I'm not conceding that I think, you know, 2254 D is playing on its face. But if you go to the cumulativeness, I would direct the court to what trial counsel said in post conviction. And this was Dr. Cunningham said he wasn't going to be able to assist us because his focus wasn't on anything that happened at the time of the crime. His focus was more on Scott's background rather than on anything that would have happened at the time. And then he says, we checked with Cunningham and that's at appendix page 2750. So trial counsel themselves felt that Cunningham was a historical witness and he didn't do an evaluation and he didn't render any diagnosis. So that cumulative finding for the reasons that the district court asserted and it's fully supported by the record, you know, that's, that is, it would be inappropriate to find that this is cumulative for those reasons. Counsel, let me ask a question. I think you've probably answered this already, but what is the ineffective assistance claim that you're making here? Is it the failure to investigate or is it the failure to investigate and the failure to call and the errors during opening statements? How would you characterize what it is that's before us? So the ineffectiveness claim was, is the ineffective assistance that counsel for failing to vet their expert, investigate their expert. Though that the other, are the other issues then related to prejudice? Correct. Well, they're, they're, they sort of serve your, your right. Your honor, they, they mostly serve prejudice functions, but they also touch upon the performance prong. For instance, the promise and opening argument discloses, you know, it's relevant to the performance problem because it demonstrates this is what trial counsel, this was one of their theories of mitigation. And this is the theory of mitigation that they were expressing to the jury that day. So it's a, you know, real time representation of what they wanted to do. So what, and the way the district court, I think properly treated and credited the evidence was that when you look at what they did, the core of our claim is that they didn't vet this expert. And I think it's at addendum 32, the district court held quote, counsel should never have been in a situation of deciding at the last minute between calling an expert with a serious truthfulness problem and calling no expert at all. So the core claim is a failure to vet this expert, but those other things are arguments that, that, that are in facts that support that claim. And they're properly, as I stated in Wiggins, you know, what, what set an opening argument is, is bears upon this trickling question. Just as the attorney general is talking about what evidence was presented at the mitigation phase bears upon the prejudice question. You know, that's what the district court did is correct. It considered the totality of the facts and circumstances and crediting and finding that these, these attorneys were ineffective for failing to present evidence on a theory that they wanted to present. That's what's unique about this claim. Usually you, you're dealing with a case where these are attorneys that want it, you know, did, usually I'm standing in front of a court saying they did a, but they should have done a plus, or they did a, but they should have done B. This is a case as recognized by the district court. They wanted to do a, and they couldn't do a because they made a huge mistake. And it was a huge, all they had to do was, was vet their expert. And this testimony that they described that they needed, they, they could have presented these at mental health status evidence on the night of the crime state of mind evidence on the night of the crime that would have established two statutory mitigators and would have rebutted the sole aggravator that the jury found, because that relates to the night of the crime and the actions on the night of the crime. And, and that essentially left, there was no mitigating evidence from a mental health professional who had examined him about his, his mental state at the time of the crime. And it's, it's pretty easy to do. Um, and I think the district court was right to say that the trial council failed to do much of anything. And that's at addendum 33, uh, they only considered the CV. Um, that's not enough. Um, reading, reading, uh, however many page document and doing nothing is not enough. Nothing is never enough. And it's so council, are there, are there some cases out there that are close to being on point factually on this, on this issue of, uh, the duty of council to do background research or do a, do an internet search on a propo, uh, an expert that is being considered. I mean, we can say, yeah, the attorney should have done it, but, um, how do we know that? Do we just assume that? Or are there some cases that have touched on this precise, uh, kind of issue? I mean, this, as I understand it, in this case, this Dr. Caruso had been a speaker at some, uh, uh, a presentation, uh, a conference, uh, in, in his, one of his fields and had been impressive. And I haven't looked at it, but I assume that curriculum was equally impressive. So what's, are we making a leap there that maybe we shouldn't make? I, I don't, I don't believe so your honor. And I think the district court, um, was right to premise this. And I, I believe it was Wiggins at that point of her opinion and also the ABA standards about, uh, preparing, preparing your case. Um, so when you, uh, and I think that's why like the opening statement is so important and trial counsel at the end saying I was ineffective for promising that an opening statement, this was a critical piece of your case. Um, and as any lawyer knows, if this is the linchpin in your case, um, you, you bet you got to lock it up as best you can. And we're not talking about, um, you know, he changed one answer and an exam we're talking about. He altered, fabricated and destroyed evidence. Um, that's a pretty big deal. And that's something that you're irretrievably broken. If you try to present that, um, and I think we forget, um, he altered, fabricated and destroyed evidence. So anything he testified to, I mean, you don't, you know, you don't have to think hard about what that cross exam would be and what that closing statement would be to the juror. Um, and I think what did, so I think the closest case judge Shepard, and I apologize for not leading with this would be Hinton versus Alabama, um, where, which relates to, um, not knowing. And again, you know, Strickland's a broad standard, so it's hard to find a Supreme Court case exactly on point. Um, but I also would Stevens versus McBride out of the seventh circuit and, um, um, Skaggs, Skaggs versus Parker out of the sixth circuit. Some of the cases we cited on our brief, but I think Hinton out of the Supreme Court is probably something, um, that, that, uh, the, the court would want to look at, um, that addresses that. And, and that, that dealt with trial counsel being mistaken about their right to an expert. I'm in this case, we're dealing with an expert that was mistaken about the qualifications of his expert of, of that. He altered fabricated and destroyed evidence. Um, and it's judge Shepard. It's, it would have been, um, and I think the district court makes this point. It would have been so easy to, to figure this out, whether it's an internet search, um, or whether it's when you're on the phone with, with Dr. Caruso saying, Hey, what are they hitting you with? Right. You know, this person, if he's presenting at a conference, he's testified before, you know, maybe you ask them over that year, like we're talking about a year here. It's not like they, you know, they only had a week. Um, you know, you know, he's testified before, you know, he's a presenter, uh, ask them, you know, what are they impeaching you with? And these other, these other times you've testified. So it's really not a heavy lift. Um, even, you know, I think a Google search is not out of, out of the realm of possibility. Um, and you know, if you, even if you have to do multiple Google searches, you know, what would that take? Five, five minutes. Um, I mean, 10 minutes, uh, it, it's not time consuming and it's not, it's not cost. It's not cost prohibitive. Um, so, but I think going back to your question, just Shepard, Hinton, Hinton, um, uh, Stevens versus McBride, Skaggs versus Parker. And I think Combs versus Coyle sort of relates to that where an expert went sideways on them because they hadn't talked to him. Um, that's also out of the Sixer. Uh, and what's critical is that when we, when we talk about, um, this is, these attorneys said we needed Dr. Caruso. And once Dr. Caruso blew up, um, the other trial attorney said, well, we had no one else. It was him. And that goes back to history. I don't want to get you so far as, as judge Covis mentioned, you know, there was a gap here and that gap was to be filled by Dr. Caruso. That was the intent. And in a case where the jury rejected most of the aggravators, they were deadlocked. Um, so anywhere from one to 11 jurors, uh, felt that life was the appropriate sentence. And when you have trial counsel indicating from the beginning that the state of mind and on the night of the offense is a critical mitigating feature, a theory that they intended to present and they hinge their mitigation case on it. And you can tell that from the opening argument, um, trial counsel were ineffective and they and in a close case that filling that gap, um, presenting, presenting the, um, that state of mind evidence, not only puts forth affirmative mitigation, but it, but it tempers the one aggravator that they did find. And in that context, there is, there is, um, the district court was correct to find and credit this evidence. Again, this is the novel review, right? That the district court only went to this claim after finding going through procedural default. Um, so the district court, these, how it credited Peterson, how it credited trial counsel regarding the importance of this evidence and the difference it would have made. Um, she did not commit clear error and assessing those and making those findings. And I think the critical, one of the, the critical nature of this testimony is when, when you get into the state of the mind, um, you could have painted for the jury, how compromised Mr. McLaughlin was that night and how these destabilizing mental health symptoms, um, led to an inability, um, to conform his, his, his conduct to, to control and that he was in extreme emotional distress because it's these debilitating instabilities, the debilitating nature of his mental illnesses that created his inability to act, um, that evening. And that's the state of mind that he was in. And that state of mind impacts, um, would have established the existence of two statutory mitigators and would have undermined the one aggravator that they found. And this is a case where the jury was open to mitigation. Um, again, as the Missouri Supreme Court said, this, this was a house of horrors. There was a history of abuse and neglect. Um, there was the history of mental health that had been presented and all of those were building blocks for the expert to describe his mental state at the time of the crime. And I, before turning to, um, I'll address the ring very briefly and then close on the, on the ineffectiveness. Um, the, uh, and I'll do them in reverse order. They've raised a procedural bar, um, on the ring and mills or on the mills claim. Um, we believe that, that it, they, they have waived it. Um, but if this court is inclined to, um, to give credence to their lack of waiver and I, I don't think they, they, uh, I don't think it was, I think it was, um, I don't think it was negligent. They've said it was negligent. Um, but if you're, are going to give credit to a procedural default, this court's authority requires us to be provided notice and an opportunity to be heard. Um, and that would, um, occur, uh, or should occur before the district. Um, and that's why I think, you know, the district court was right to find that this was a waiver. Um, they asserted procedural default from other, um, aspects of, of the Missouri Supreme Court opinion. Um, and, and I assume they read the opinion and read the mills part of it and, um, decided not to, to allege a procedural default, uh, as to the T question, um, mills and ring both predate, uh, predate the predate, uh, Mr. McLaughlin's, uh, direct appeal being denied. So, so Teague is not on the table. Um, I would ask you also ask you to affirm judge Perry. She committed no error. Um, ring requires fact findings be made by a jury. If they, if they elevate the sentence to death, uh, under Missouri law, this is a fact finding and an eligibility determination. And that's when that fact finding didn't occur here, uh, due to the deadlock, the trial court erred in making it. Um, I would, I would close. I have just a few, few minutes left. Um, if there are no questions on the ring, uh, I will go back to the ineffective assistance to counsel. Um, again, the district court, um, studied this issue, uh, took evidence and, and to know, and it DeNovo context credited testimony and, and ultimately concluded that, um, Mr. McLaughlin attorneys were deficient and deficient to Mr. McLaughlin's prejudice. And, um, those underlying credibility findings made by the district court are, are, cannot be disturbed unless there's clear error. And there is no clear error here. Um, the testimony that could have been presented, uh, would have provided the existence of two mitigators and would have undermined the one aggravator the jury found in a close case. If there are no further questions, um, I, on behalf of Mr. McLaughlin, I want to thank the court for extending the time for argument. I know you didn't have to do that. And, um, we would ask the court to affirm judge Perry. Thank you. Thank you, Mr. Kopp and, uh, Mr. Spillane looks like you have almost six minutes to proceed. May it please the court. I want to address some things I heard. I'll just go through the list. I heard first that it was the whole strategy, uh, to do statutory mitigators. And then I heard council come back, uh, to another reference to establishing static statutory mitigators. The testimony of council at the post-conviction hearing was that it is his practice never to use statutory mitigators in a capital case because he feels it takes focus off of all the mitigators. And, uh, you testified that he would have done the same thing had, uh, Dr. Crusoe been called. That's my recollection of the testimony. Uh, the next thing I heard, uh, argument that it wasn't addressed on the merits by the Missouri Supreme Court, the failure to investigate claim that does not deal with, uh, Williams v. Roper and the district court addressing the failure to investigate claim on the merits after an evidentiary hearing. Uh, so I would argue that under Williams v. Roper, you look through and get deference there, even if you don't from the Missouri Supreme Court. Uh, I would argue that the entire thrust of, uh, Mr. Cunningham, excuse me, Dr. Cunningham's testimony was how it was difficult to make a choice at the time of the, of the crime because of everything that had happened to him. He went on and on about that. So in, in that sense, it is cumulative and, uh, pretty much the same thing we would have got from Dr. Crusoe. I also want to talk about testing. There is some argument that Dr. Cunningham was, uh, and it wasn't made here, but it's in the brief, uh, was, uh, somehow inadequate for not doing testing. Well, Dr. Peterson, who they called at the PCR hearing, tried to do testing. He tried twice, I believe with the PAI, he couldn't get consistent results. There are other experts in neuropsychologists. Dr. Heilbrunner also tried testimony, tried testing at, at, with the MMPI and he couldn't get consistent results. So we have no evidence that Caruso would have been able to do any testing that would have gotten valid results. Uh, I want to talk about, uh, alleged ineffective, go ahead. I let alleged ineffectiveness, uh, for not doing a Google search. What we're dealing with is the wide range of professional competence at trial in the fall of 2006. We're not dealing about hindsight. Strickland is very clear that we shouldn't look back and say, ah, something bad happened. The question is what was, what counsel did, which is he knew that this man was an expert. He knew that he gave lectures. He knew he had been recommended and he knew he had testified multiple times before. Uh, I think by the time of trial, there's evidence in the record that he had testified something like 90 times. So was it outside the wide range of professional competence not to look back and find something he did in, in medical school? No. Uh, uh, another thing was I heard twice referred to as altering evidence, falsifying evidence. This was data in an experiment. It wasn't evidence in a case. I'm not sure that's important, but I wanted to correct the record on that. Uh, I heard a reference to the Missouri Supreme Court saying house of horrors. My recollection is not that the Missouri Supreme Court found that this was a house of horrors, but that a witness, uh, supposedly told this to one of the experts and described that someone who knew him from childhood, uh, in reference to Teague. I heard that Teague doesn't apply because McCoy and Mills predate this case. The standard for Teague is does the case dictate the result in this case? Not is it earlier, but does it dictate the result? Mills and McCoy don't dictate the result the petitioner wants now. They certainly didn't at the time of trial. That is an expansion of Mills and McCoy. So it fails under Teague. Something else I didn't hear addressed, but I'll highlight it briefly is Kennedy v. Kemner. Unless they can find a way around that, the district court erred in even getting to the ineffectiveness case under Martinez because the prejudice from ineffective assistance of post-conviction counsel is alleged to have occurred at the Missouri Supreme Court, not at the post-conviction level. So I don't think they can even get past the, uh, uh, the, uh, they can't even use Martinez v. Ryan to get past the bar. I see I have about a minute left, so I'll be quiet and ask if there are any questions. Thank you, Your Honor. I appreciate it. Thank you very much, counsel. We appreciate your appearance today. The case has been well argued and it is presented. The court will render a decision in due course. And with that, Mr.